## PIERRE A. BECKNELL *v.* A. G. WEINDHAL.

Article 656 of the Civil Code should be so construed, as to reconcile the respect due to property with the interests of agriculture.

The fall of lands fronting on the water courses in Louisiana, is from the river to the swamps behind ; the natural drain is, therefore, from the front to the rear, and the right to drain them to the rear by means of ditches, cannot be doubted ; but that right should be exercised, so as to cause no injury to others without necessity. The owner of front lands cannot, therefore, by artificial drainage, accumulate the water in the rear of his field in a much larger volume, than if suffered to flow naturally, and thereby impose a more burdensome servitude on the lands of the proprietor below.

APPEAL from the District Court of the parish of St. John the Baptist, *Albert Duffel*, J. *D. Forcelle*, for plaintiff. *St. Paul* and *Bouny*, for defendant. By the court:

ROST, J. The plaintiff, who is the owner of a sugar plantation fronting on the Mississippi river, has obtained, against the defendant who owns the adjoining plantation below, a judgment ordering him to remove certain works erected by him on his estate, on the ground, that they obstruct one of the natural drains of the plaintiff's land.

The defendant has appealed, and asks a reversal of the judgment on two grounds: First, that the natural drain claimed, no longer exists. Second, that

if it does exist, the plaintiff has done upon his land, works which render the servitude more burdensome, and the drain constructed by him is no more than adequate to counteract the injurious effects of those works upon his lands. He relies upon the authority of the case of *Martin* v. *Jett*, 12 L. R. 501.

It may be conceded, that article 656 of the code, upon which both parties rely, should be construed, so as to reconcile the respect due to property with the interests and necessities of agriculture, and the Roman law from which that article is derived, is the best source to which we can resort for the purpose of ascertaining its practical meaning. Although the rule of law was, in Rome as here, that the owner of the upper estate can do no act, by which the servitude on the estate below is rendered more burdensome, by the jurisprudence of that country, he had the right to do all works necessary for the cultivation of his fields, without regard to consequences; he could throw his land in ridges, and give the water-furrows any direction he thought proper; when useful to his crops, he was authorized to accumulate the waters falling upon his lands, in the rear of his field, without being subjected to the action *aquae pluviae arcendae*. D. § 5, l. 1, *de aqua et aqua*.

The same right is clearly deducible from the tenure of the lands fronting on water courses in Louisiana. The fall of those lands, is from the river to the swamps behind. The natural drain of the water falling on those lands, is therefore generally from the front to the rear, and the facility of draining to the low grounds behind was, no doubt, one of the reasons why grants were made with narrow fronts on the rivers, and running back a great depth for quantity. The condition of those grants was, that the land should be cultivated; and the obligation to improve and cultivate, necessarily implies the power in the grantee to do all works necessary to a profitable cultivation; and, as they cannot be cultivated without being drained, the right to drain them to the rear, by means of ditches, cannot be doubted; but that right should be exercised so as to cause no injury to others, without necessity. The plaintiff, in this case, must take the burdens as well as the benefits of artifical drainage; and after availing himself of it, to accumulate the water in the rear of his field in a much larger volume than it it would have if suffered to flow naturally, and rendering thereby the servitude on the back lands of the defendant more burdensome, it would be unjust to permit him to accumulate, without necessity, a portion of those waters in the middle of his field, and to throw them, as from a stream, on the cultivated lands of the defendant. This necessity is shown not to exist; the works complained of were erected several years ago, and the canal, at the defendant's lower line, has been found sufficient for the drainage of his land to a greater depth, than that of the natural drain claimed.

Under the Roman law, when the works erected to obstruct the running of the water had been made openly, and in the presence of the party who had a right to object to them, and he had not objected, his implied acquiescence was held to be a waiver of the right of servitude. See Digest, laws 19 and 20 *de aqua et equa*. The spirit of that legislation, at least, may be invoked in aid of the presumption arising from the long silence of the plaintiff, that he considered himself no longer entitled to drain through the defendant's fields.

There are, no doubt, cases in which the drainage from the front to the rear, is interrupted by bayous and deep *coulées*, which the proprietor of the lower estate is bound to keep open; but every low place, in a cultivated field, is not a natural drain, although the rain water coming from above might flow through it, if the land was in its natural state; the best portion of the alluvial soil of Louisiana

is undulating, and the opposite construction would subject half of it, to perpetual sterility. When the low places in a field are not too deep to be drained by the system of draining now in general use, they become a part of the field, and cease to be natural drains.

The evidence in this case shows, that the *coulée*, claimed as a natural drain, begins some distance from the land of the plaintiff, and extends through it and through that of the defendant; that a portion of it, remaining in its natural state at the boundary line of the two plantations, is about two feet deep; that other parts of it have been cultivated for many years by the defendant, and others, and that it would all be susceptible of cultivation, if the plaintiff had not converted that portion of it, between his lines, into broad and deep reservoirs for the rain water. It is also shown, that the plaintiff, not viewing it as the natural drain of the lands above him, has drained it up as it enters his field, and again in the middle of his plantation; the water in the reservoir between the two dams, is carried to the swamp behind by four leading ditches; that which accumulates between the lower dam and the defendant's line, is carried to the rear by a canal deeper than the *coulée* in its natural state, and sufficient to drain that portion of the plantation. If, by a sudden sinking of the land in the direction of this canal, it had become lower than the *coulée*, the new opening thus formed would have been, henceforward, the natural drain of the plaintiff's land, and the *coulée* might have been closed by the defendant and cultivated. The plaintiff has effected the same result by artificial means, and, as in the interest of agriculture the law gives to his canal all the immunities of a natural drain, it must also be viewed in that light, so far as it liberates the defendent from a double servitude.

It is a matter of high public interest, that all low and wet lands in our fields, be made useful to man, and the conclusion to which we have come, is a fair inference from the principle invoked by the plaintiff, that in cases like this, the abstract legal rights of the parties, should be controlled by the interests of agriculture.

For the reasons assigned, it is ordered, that the judgment in this case be reversed. It is further ordered, that the injunction be dissolved; and that there be judgment in favor of the defendant, with costs in both courts.