JACKSON *v.* KELLER.

Opinion delivered May 16, 1910.

1. APPEAL AND ERROR—CHANCELLOR'S FINDING—CONCLUSIVENESS.—A chancellor's finding of facts will not be set aside unless it is clearly against the preponderance of the evidence.  (Page 244.)

2. WATERS—OBSTRUCTING FLOW OF SURFACE WATER.—A lower adjacent proprietor will not be liable to the upper proprietor for obstructing the flow of surface water by a levee where that was the only practical method of protecting his land from surface water thrown against it by a ditch dug by the upper proprietor.  (Page 245.)

Appeal from Clay Chancery Court, Eastern District; *Edward D. Robertson*, Chancellor; affirmed.

Appellant, *pro se.*

*Spence & Dudley*, for appellee.

WOOD, J.  Appellant is the owner of the north half of the northeast quarter of section 14, township 20 north, range 8 east, in Clay County, Arkansas.  Appellee owns the southeast quarter of the northest quarter of the above section adjoining the lands of appellant on the south.  Appellant by this action seeks to enjoin appellee from constructing a dam or levee on the land of appellee which appellant alleges obstructs the natural flow of water that passes off of his land on to the land of appellee, thereby causing the water to overflow appellant's land and to render same unfit for cultivation.

Appellee, answering the complaint, denied that there was a branch or drain of natural formation on appellant's land running from north to south on to appellee's land; alleged that on appellant's land there were low "swaggy" places and ponds with no definite course; that appellant has cut a system of ditches through his land, and on to the land of appellee, in order to drain the low places on the land of appellant, thereby deliver-

ing upon the land of appellee a large stream of water which would never reach appellee's land by any natural flow thereof. Appellee denied that he had obstructed any natural drain from the lands of appellant; alleged that he had cut a ditch of similar dimensions to that cut by appellant, on his land; that appellee cut this ditch on his own land further south of the ditch cut by appellant on appellant's land; that this ditch was cut on the west side of the land of appellee and running south into a large ditch on the public road; that appellant had dammed this ditch on appellee's land by driving stakes in same, thereby turning the water of said ditch into the ditch cut on the south side of appellant's land running east; that, if the ditch cut by appellant on his land was permitted to flow south into the ditch cut by appellee, it would carry off all the water, etc., intended to be carried by it. Appellee alleged that the small embankment made by him is at a low swaggy place in the northwest corner of his land, and this low place also extends over into appellant's land; that the making of this embankment was only for the purpose of protecting appellee from the volume of water turned on him by the ditches that appellant had made on his own land. Appellee prayed that appellant's complaint be dismissed for want of equity.

It will be observed that appellee admits that he erected a "small embankment" across a "low swaggy place on the northwest corner of his land." But he also says that the making of this embankment was "only for the purpose of protecting his land from the volume of water turned on it by the ditches that appellant had constructed on appellant's land."

The testimony of appellant and a plat which is in the record and made a part of his evidence shows that there was "a flat just north of where the water passed from appellant's land on to the land of appellee, forming a pond covering about an acre and a half. Appellant testified that there were two outlets from his land into appellee's land, which united just after passing into appellee's land, the eastern outlet being four rods wide and the western outlet being thirteen rods wide with a spot of high ground two rods wide between them; that these drains where they enter the land of appellee had well-defined banks that confined the water within them; that appellee had erected a dam or levee about two feet high across these two outlets

or drains, causing several acres of appellant's land to overflow. Appellant further testified that he cut a ditch about sixty rods long between his two forties; that this ditch was four feet wide at the top and about two feet deep. It ran due south from its point of beginning on appellant's land to the dividing line between the land of appellant and appellee, thence east to a point of high land. Appellant testified that the object in cutting these ditches, or this ditch, was to prevent the water from overflowing into appellee's land through the eastern outlet, and to bring it to the old ditch that was cut years ago on the west side of the appellee's land, and that ditch was now nearly filled. In another place in his testimony he says: "The object in cutting this ditch was to concentrate the water of these ponds to the old ditch west of Keller's land. About twenty rods of this ditch was cut through land that did not overflow except in very high water. That twenty rods was intended to catch the water before it got into these ponds." Appellant himself also testified: "The drains, as marked down in several places, have well-defined banks; some places they were not." But he was satisfied "that the drains as marked designate the natural flow of the water." One witness on behalf of appellant testified: "These drains on the map are just low slashy places, and have no banks. There is part of them in cultivation, and some in thickets. They plow across these drains. Another witness, when asked if "these drains that are marked in purple on this plat have any well-defined banks," replied: "Well, no; not any banks; just a natural low place in the land, about two hundred feet wide, and wider in some places than in others."

The circuit judge, in the absence of the chancellor from the county, refused a temporary restraining order to appellant, and the chancellor on the final hearing denied appellant's prayer for injunction and dismissed his complaint.

The decree was not clearly against the preponderance of the evidence. The question was one of fact as to whether appellee by building the levee across the low place on his own land had unnecessarily injured appellant in endeavoring to protect himself. The testimony warranted a finding that this was surface water. The low place on appellee's land into which the water came from appellant's land did not have any well-defined channel or banks. Appellee had the right to protect

himself from this surface water as best he could without doing unnecessary damage to the upper proprietor. It was the duty of appellee, if he could have done so at reasonable expense, to have controlled the waters that came upon his land, in their natural flow, from appellant's land, by means of ditches instead of the embankment, if the former could have been made as effectual as the latter. For by the embankment appellee injured the lands of appellant while protecting his own. However, under the evidence in the record, the court was justified in finding that the embankment resorted to by appellee was the only practical method of protecting his land from the water that came upon it from the appellant's land. The testimony tends to show that appellant by digging ditches on his own land to control the surface water had thereby thrown same in greater volume on to appellee's land, and it also tends to prove that appellant had driven stakes in the ditch running south on the western part of appellee's land, and that this ditch would not carry off the water in the volume that it came upon appellee's land after the digging of the ditches by appellant. The chancellor evidently found that appellant was at fault in digging ditches that turned the water on to appellee's land in greater volume than it would have gone had it been permitted to run in its natural course along and into the swale that existed where the waters passed from appellant's land on to the land of appellee. Appellant, while protecting himself from the surface water that accumulated on his land, had no right to concentrate and throw it by ditches with greater force and volume than it otherwise would have gone upon appellee's land, so as to unnecessarily damage him. See *St. Louis, I. M. & S. Ry. Co.* v. *Magness,* 93 Ark. 46. Appellee had the right to erect an embankment to protect his land against such increased flow upon it. In the draining of one's land of surface water it is not permissible to direct the flow of the water upon the adjoining land, or to increase the volume of the flow by the construction of a drain or ditch. Tiedeman on Real Property, § 615, p. 587. The doctrine of *Baker* v. *Allen,* 66 Ark. 275, when applied to the facts of this case, shows that the decree was correct.

Affirm.