(83 South. 445)

No. 23657.

PETITE ANSE COTEAU DRAINAGE DIST.
v. YOUNGSVILLE DRAINAGE DIST.
OF PARISH OF LAFAYETTE.

In re PETITE ANSE COTEAU DRAINAGE
DIST.

(Nov. 3, 1919.   Rehearing Denied Dec. 1, 1919.)

*(Syllabus by Editorial Staff.)*

1. DRAINS ⬤⟿57—ONE DISTRICT CAN ACCELERATE WATERS UPON ANOTHER DISTRICT.

Under Civ. Code, art. 660, one drainage district by deepening and enlarging its coulees had the right to accelerate the flow of waters through them so that they came suddenly instead of gradually upon a lower lying drainage district, and overtaxed the capacity of its bayou, so as to flood the lands of the district.

2. DRAINS ⬤⟿57—DISTRICT ACCELERATING FLOW OF WATERS NOT BOUND TO ASSIST SERVIENT DISTRICT IN ENLARGING DRAIN.

Despite Act No. 61 of 1904, Act No. 317 of 1910, §§ 4, 6, 8, 11, Act No. 227 of 1914, where one drainage district by deepening and enlarging its coulees and other natural channels so accelerated the flow of its waters upon a lower district as to exceed the capacity of its bayous and ditches and to flood its land, there was no obligation upon the superior district to co-operate with the servient district in enlarging the servient district's coulee or ditch to a sufficient size to carry the excess water.

3. DRAINS ⬤⟿57—DISTRICT CANNOT ENLARGE ARTIFICIAL CHANNEL INJURING SERVIENT DISTRICT.

One drainage district had no right to open an artificial channel in its lands which tended so to increase the flow of water therefrom as to exceed the drainage capacity of coulees and ditches of a lower lying district and to flood its lands.

Certiorari, etc., from Eighteenth Judicial District Court, Parish of Lafayette; Wm. Campbell, Judge.

Suit for injunction by the Petite Anse Coteau Drainage District against the Youngsville Drainage District of the Parish of Lafayette, resulting in decree for defendant, and plaintiff applies for writs of mandamus, certiorari, and prohibition.   Writs dismissed.

146 La.—6

Burke & Smith, of New Iberia, for relator.

Mouton & De Baillon, of Lafayette, for respondent.

PROVOSTY, J.   The territory of the plaintiff drainage district consists in greater part of lands whose elevation is but a few feet above gulf level.   These lowlands were swamp, but are now cultivable as the result of the drainage created by the plaintiff district.   This drainage is through Bayou Petite Anse, which runs through this swamp land. Originally this bayou had banks only in places, it consisting otherwise of mere bankless depressions.   The plaintiff district deepened and enlarged it by dredging.

This was done some years before the organization of the defendant district.   The lands of the latter district are much higher than those of the plaintiff district.   One part of them drains in the direction of the plaintiff district.   The other part, which is on the other side of a certain ridge, drains in another direction.   The drainage in the direction of the plaintiff district is through Coulees Parc Perdu and Capitaine.   The latter debouches into the former, which in turn empties into Bayou Petite Anse.   These coulees have been deepened and enlarged by defendant district, so that the waters which formerly came through them gradually will now come suddenly, and overtax the capacity of Bayou Petite Anse, as enlarged, and flood and render uncultivable a very considerable part of the lands of the plaintiff district.

To prevent this, the plaintiff district applied to the lower court for an injunction, claiming that the drainage through Petite Anse is no longer natural but artificial, and that it being such the defendant district is not entitled to the benefit of it; that the rule by which the lower estate must receive the drainage waters of the upper estate does not apply to the case of a drainage district gathering together all its waters artificially

and pouring them suddenly upon the lower district, to the destruction of the latter; that every equitable consideration dictates that the upper district should share in the expense of the artificial drainage destined to serve both districts; that this equity has been made obligatory upon the upper district by the drainage district legislation of this state, to wit, Act 317 of 1910, as amended by Acts 219 of 1912, 227 of 1914, 77 of 1916, and 57 of 1918, also Act 61 of 1904; that plaintiff has invited the defendant district to co-operate in enlarging Bayou Petite Anse, so as to bring it up to the requirements of the two districts; but that, after conference over the matter in a joint meeting of the boards of the two districts, the defendant has refused this co-operation.

The trial court, after a hearing, on rule nisi, refused to grant the injunction; and plaintiff asks that this court, in the exercise of its supervisory powers, compel it to do so.

The drainage problem which is thus presented as between these two districts is precisely the same as that presented on a smaller scale between upper and lower private estates, for which article 660, C. C., has made provision, as follows:

"Art. 660. It is a servitude due by the estate situated below to receive the waters which run naturally from the estate situated above, provided the industry of man has not been used to create that servitude.

"The proprietor below is not at liberty to raise any dam, or to make any other work, to prevent this running of the water.

"The proprietor above can do nothing whereby the natural servitude due by the estate below may be rendered more burdensome."

Of this last paragraph this court, in Martin v. Jett, 12 La. 504, 32 Am. Dec. 120, said:

"If we were to take this last clause in its strict literal sense, no doubt would remain on our minds but that the plaintiff, by cutting numerous ditches on his land, leading to a central reservoir, had greatly aggravated the servitude due by the adjoining estate. By means of such canals, the water which would otherwise remain stagnant, in several ponds in different parts of the tract, or gradually flow onto the defendant's land, exposed to evaporation, when spread over a wider surface, are collected, and poured in a mass upon his neighbor, and during heavy rains might seriously injure his crop.

"But it is contended that, although our Code contains no explanatory article, similar to that in the Code Napoleon, which, in controversies like the present, directs the tribunals to decide in such a manner as to reconcile the respect due to property with the interests of agriculture, yet such ought to be the interpretation of the article in question."

And it is in that sense that the article has heretofore been interpreted. In the case of Becknell v. Weindhal, 7 La. Ann. 292, this court said:

"It may be conceded that article 656 of the Code, upon which both parties rely, should be construed so as to reconcile the respect due to property with the interests and necessities of agriculture, and the Roman Law from which that article is derived is the best source to which we can resort for the purpose of ascertaining its practical meaning. Although the rule of law was, in Rome as here, that the owner of the upper estate can do no act by which the servitude on the estate below is rendered more burdensome, by the jurisprudence of that country, he had the right to do all works necessary for the cultivation of his fields, without regard to consequences; he could throw his land in ridges, and give the water furrows any direction he thought proper; when useful to his crops, he was authorized to accumulate the waters falling upon his lands in the rear of his field, without being subjected to the action aquæ pulviæ arcendæ. D. § 5 1. 1,; de aqua et aqua."

That decision was rendered in 1852, and has been the accepted view since then, and universally acted upon. Against it the decision in Delahoussaye v. Judice, 13 La. Ann. 587, 71 Am. Dec. 521, was evidently not intended to militate; although it would seem to deny to the upper estate the right to drain a marais or pond by deepening its outlet. The cases in our reports are numerous in which the contention has been made that the drain servitude was being rendered more burdensome. We see no necessity for reviewing

them, since they only show the accepted and settled doctrine to be as stated in Ludeling v. Stubbs, 34 La. Ann. 935, as follows:

"In the case of Guesnard v. Bird, 33 An. 796, we had occasion to make a thorough examination of the law and an exhaustive review of our jurisprudence on this question.

"This review resulted in the expression of conclusions which we recently reaffirmed in the case of Kennedy v. McCullom, 34 An. 568, not yet reported. From our jurisprudence, as thus firmly established, we understand that the issues in this case are to be tested under the following rules:

"The owner of the lower lands of two adjacent estates can do no act which would impede the natural flow of waters on his lands, from those of the higher estate. The owner of the superior estate may make all drainage works which are necessary to the proper cultivation and to the agricultural development of his estate. To that end, he may cut ditches and canals by which the waters running on his estate may be concentrated, and their flow increased beyond the slow process by which they would ultimately reach the same destination.

"But the owner of the superior estate cannot improve his lands to the injury of his neighbor, and thus he will not be allowed to cut ditches or canals, or do other drainage works by which the waters running on his lands will be diverted from their natural flow, and concentrated so as to flow on the lower lands of the adjacent estate at a point which would not be their natural destination, thus increasing the volume of water which would by natural flow run over or reach any portion of the lower adjacent estate, or to drain over his neighbor's lands stagnant waters from his, and to thus render the servitude due by the estate below more burdensome. C. C. art. 660; Martin v. Jett, 12 La. 501, 32 Am. Dec. 120; Becknell v. Weindhal, 7 An. 291; Sowers & Jamison v. E. Shiff et al., 15 An. 300; Barrow v. Landry, 15 An. 681, 77 Am. Dec. 199; Delahoussaye v. Judice, 13 An. 587, 71 Am. Dec. 521; Guesnard v. Bird, 33 An. 796; Kennedy v. McCullom, 34 An. 568."

[1] The defendant district has done no more than what it is here said the owner of the upper estate has the right to do, except that by not exactly following the coulees in some places it has shortened them somewhat, but not to such an extent as would make any appreciable difference in the flow of the water where it reaches Bayou Petite Anse.

Passing to the contention that the equity of co-operation in the enlargement of Bayou Petite Anse so as to accommodate both districts has been made obligatory by statute upon the defendant district, we find that the statutory provisions relied upon by plaintiff read as follows:

Section 4 of Act 317 of 1910:

"When the drainage of any locality is such that, in the opinion of the police juries of the respective parishes, it becomes necessary to organize or create drainage districts composed partly of lands situated in adjoining parishes, then that such drainage may be created by joint resolution of the police juries of the respective parishes, or by an ordinance * * * passed by the police jury of one parish and approved by the police jury or juries of the other parish or parishes."

Section 6:

"Such drainage district shall also have the power of expropriating property for the purpose of acquiring sites for pumping stations or acquiring land for any other purpose that it may find necessary," and, further, "And shall own the right of way for canals and ditches, and all sites which are acquired either by donation, purchase or expropriation, in full ownership. The drainage commissioners of a drainage district for the purpose of securing a proper outlet for the waters of the district they represent, shall have authority to extend canals or ditches or both canals and ditches beyond the limits of their respective districts with the same power and authority of expropriating the right of way in the same manner and to the same extent as if such canals and ditches were wholly within the district they represent."

Section 8:

"Said drainage board or commissioners shall have the power, and it shall be their duty, to open all natural drains which they may deem necessary in their respective districts, and to perform all work connected therewith, which they may deem necessary to make the opening of said natural drains effective. They shall also have power to cut and open new drains or canals, wherever deemed necessary. They shall have the further power, as hereinbefore provided to divide their districts into subdrainage districts and to drain the entire district or sub-

drainage 'district by leveeing, canaling and pumping, or by any means whatever that they deem most advantageous to drain or reclaim the lands. In order to carry out this drainage work, the drainage commissioners are specially authorized to enter into contracts for the performance of such work, or to purchase machinery and have the work performed under their supervision, and to perform all other acts necessary to fully drain all the lands in their said district, or subdrainage district, and maintain such drainage when established."

### Section 11:

"Whenever the interests of two or more contiguous drainage districts, or if any such drainage districts and any municipal corporation are identical, or if they have to any extent a community of interest in cleaning and opening of natural drains or new works of whatever nature they may be, said drainage districts and municipal corporations may undertake and complete such work as a joint enterprise determining in advance, the proportion which each drainage district and municipal corporation shall contribute to said work." etc.

### Act 227 of 1914:

"The drainage commissioners of a drainage district or subdrainage district, and the committee appointed under the provisions of this act to carry on the work of reclamation and superintend the maintenance of such subdrainage district, together with the state board of engineers, shall have absolute control over the drainage of their respective districts * * * and shall act to the best interest of the district."

### Act 61 of 1904:

"The various levee and drainage districts of this state shall have control over all public drainage channels within the limits of their respective districts and for a space of one hundred feet on each side thereof, selected by the district and recommended and approved by the board of state engineers, whether such drainage channels have been improved by the levee or drainage district, or have been adopted without improvement as necessary parts of or extensions to improved drainage channels; and shall have authority to adopt rules and regulations for preserving the efficiency of said drainage channels."

[2] We fail to discover in these statutes any exception created to the rule that the lower estate owes a servitude of drain to the upper estate. By section 11 of the act of 1910 authority is conferred upon a drainage district to do work outside of its limits where it deems such work necessary, and to co-operate with another district in such outside work; but no obligation is imposed in the premises.

The defendant is exercising no greater right as a district than the owners of the lands of the district have heretofore possessed of draining their lands into these two coulees and enlarging these coulees for accommodating the drainage waters. Had the plaintiff district not been created and Bayou Petite Anse not been enlarged by plaintiff, the right to pour these waters upon the lower lands through these natural drains, and of enlarging these natural drains as was rendered necessary for the effective drainage of the lands to which they are tributary, would, we think, have been unquestionable, under our settled jurisprudence. The injury that might result therefrom to the lowlands —debtors to the servitude of drain—would have been damnum absque injuria. That the work is being done by an organized district, instead of by the landowners in their private capacity, can make no difference. By denying to defendant district the right to pour its waters into Bayou Petite Anse, plaintiff would in reality be asserting a proprietary interest which it does not own in this bayou.

[3] It seems, however, that for moving this dredgeboat across the ridge which divides the defendant district into two watersheds, the contractor of the defendant district without authority from defendant cut through this ridge, thus opening a channel through which drainage waters to which the lands of the plaintiff district do not owe a servitude may pass; and the injunction which plaintiff is applying for is directed as well against the use of this opening for drainage in the direction of the plaintiff district. The defendant

district admits that it has no right to drain towards the lands of the plaintiff district through this opening, but contends that the drainage through this opening is in the other direction. The evidence leaves that point in doubt. Hence as to this opening also the injunction was properly refused. But the right must be reserved to renew its application for an injunction on a proper showing in that connection.

The writs herein are therefore dismissed, at the cost of plaintiff but subject to the right of plaintiff to renew on a proper showing its application for an injunction as against the opening in the ridge mentioned in this opinion.