No. 2097

Second Circuit

---

### MRS. CHANDLER AND HUSBAND v. SCOGIN

---

(December 11, 1926. Opinion and Decree.)
(December 25, 1926. Rehearing Expires.)

---

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Waters and Water Courses—Par. 7, 8.**

Construing Articles 660 and 661 of the Civil Code together, an obstruction to a drain by constructing terraces will not be ordered destroyed unless the adjoining landowner demanding its destruction shows that these terraces will injure his property.

2. **Louisiana Digest—Waters and Water Courses—Par. 3, 7, 8; Damages—Par. 3; Servitude—Par. 15.**

Where the evidence is conflicting but the plaintiff failed to establish that terraces placed on defendant's property has rendered the servitude with which it was burdened more onerous by obstructing the drains, there are no damages proven.

Appeal from the Eleventh Judicial District Court of Louisiana, Parish of Red River. Hon. J. W. Jones, Jr., Judge.

Action by Mrs. Lillie Chandler and husband against I. C. Scoggin.

There was judgment for plaintiffs and defendant appealed.

Judgment reversed and plaintiff's demands rejected as of non-suit.

Nettles & Bethard, of Coushatta, attorneys for plaintiffs, appellees.

John F. Stephens, S. R. Thomas, of Coushatta, attorneys for defendant, appellant.

WEBB, J.    The parties to this action are adjoining landowners. The SE¼ of SW¼ and SW¼ of SE¼ of Section 13, Township 13 north, Range 9 west, owned by defendant, Scogin, adjoins the NE¼ of NW¼ and NW¼ of NE¼ of Section 24, Township 13 north, Range 9 west, owned by plaintiff, Chandler.

The properties are situated in the hill section of Red River parish, and that belonging to Chandler being lower in elevation than that belonging to Scogin owes to the latter a servitude of drain.

Scogin constructed on the SW¼ of SE¼ of Section 13 terraces, and plaintiff, claiming that defendant had constructed his terraces in such manner as to close one of the natural drains, had diverted the water falling on the property into other drains leading from his property onto plaintiff's and thus causing the latter drains to be overloaded and to overflow and flood plaintiff's property, and also forcing water falling on the lower terraces to pass onto plaintiff's property broadcast and not at the, places where it would have flooded before the terraces were constructed, thus causing plaintiff's land to wash and injure, and resulting in damage to plaintiff, brought this suit to recover judgment for the damages alleged to have been sustained, and praying for judgment on final trial for the issuance of injunctions commanding defendant to demolish the terraces and enjoining him from draining the surface waters from his estate onto the lands of plaintiff other than through the natural drains.

The defendant answered, pleading, in effect, the general denial, and on trial

judgment was rendered in favor of plaintiff and against defendant for the sum of $100.00 and ordering defendant to remove the two lower terraces and restore that portion of defendant's property to its former state, or to ditch the said ·property so as to allow the drainage therefrom to take its natural course before entering plaintiff's property within thirty days from date of judgment, and in default thereof that defendant be subject to a rule for contempt of court; and, further, in event of his failure to demolish the two terraces, that the sheriff be ordered to demolish them and that defendant be permanently restrained from erecting in the future any dikes, terraces or other obstruction to the natural drainage on said portion of the property occupied by the said two lower terraces.

The defendant appealed from the judgment and plaintiff has answered the appeal praying that the judgment be amended so as to allow damages in the sum of one thousand dollars and to order the defendant · to demolish all of the terraces constructed by him.

## OPINION

The plaintiff's property is situated below defendant's, and by reason of its situation it is burdened with the servitude of receiving water which falls upon defendant's lands, as well as that which falls upon other adjoining lands. The contour of the surface of the SW¼ of SE¼ of Section 13, which was terraced by the defendant, was, in its former state, such that the waters falling thereon at points above the points where the properties were contiguous, came upon plaintiff's land through three drains, two of which entered the NW¼ of NE¼ of Section 24 from the SW¼ of SE¼ of Section 13, and the other entered the NE¼ of NW¼ of

Section 24 from the SE¼ of SW¼ of Section 13, all of the water falling upon defendant's property finally reaching a point in the NE¼ of NW¼ of Section 24, and this same general condition still exists after the construction of the terraces, but plaintiff contends that defendant has constructed the terraces in such manner that one of the natural drains entering the NW¼ of NE¼ of Section 24 has been closed and will force the waters which may fall upon the area or watershed tributary to that drain to come upon plaintiff's lands through the other drain entering the NW¼ of NE¼ of Section 24 and NE¼ of NW¼ of Section 24 and also to come upon the NW¼ of NE¼ of Section 24 in a broadcast manner.

The defendant constructed nine terraces on his property and two of these terraces, being the two nearest the line between the SW¼ of SE¼ of Section 13 and NW¼ of NE¼ of Section 24 open in such manner that the water falling upon their areas will not come into the natural drain before reaching plaintiff's property, and the other terraces are so constructed that the water which may fall upon five of them is thrown to the east and west; that thrown to the east passing first onto the property of Collins and thence into a drain having its source on the Collins tract and passing diagonally over the SW¼ of SE¼ of Section 13 at some distance above the southeast corner of this latter tract and thence onto the NW¼ of NE¼ of Section 24 until it converges with a drain which comes into the latter subdivision from ·the east; and that thrown to the west passing into a ditch alongside the public road which runs north and south between the SE¼ of SW¼ and SW¼ of SE¼ of Section 13, and thence through a ditch to the drain entering the NE¼ of NW¼ of Section 24 from the SE¼ of SW¼ of Section 13,

while the water which may fall on the other two terraces will pass to the north and be entirely diverted from plaintiff's property.

The plaintiff contends for the following propositions:

First: That she has the legal right to force defendant to open the drain which has been closed by the terraces, without regard to whether or not the closing of such drain will or will not injure him.

Second. That the closing of the drain by the construction of the terraces has injured her in that water falling upon the area which was tributary to that drain and which naturally would have found its way into such drain and thence over plaintiff's land, will be diverted to the east onto the lands of Collins and into the drain having its source on such lands and will result in that drain being overloaded, and will thus cause the drain to overflow and the water to spread over plaintiff's property and injure it; and that the same condition exists as to the water diverted to the west, and, therefore, the terraces should be demolished.

Third: That the terraces are constructed in such manner, especially the two lower (which, we assume, are the ones which obstruct the drain at the point nearest to where such drain originally opened onto plaintiff's land, the NW¼ of NE¼ of Section 24) that the water which will fall upon the areas covered by such terraces would have found its way, had the land remained in its former state, to the drain before coming upon plaintiff's property, has been diverted by the terraces and thrown broadcast upon plaintiff's property, and that these terraces should in any event be destroyed.

Considering these positions in the order stated:

## I.

The plaintiff, in support of this position, cites Article 660 and 661 of the Civil Code, which are as follows:

"It is a servitude due by the estate situated below to receive the waters which run naturally from the estate situated above, provided the industry of man has not been used to create that servitude.

"The proprietor below is not at liberty to raise any dam, or to make any other work, to prevent this running of the water.

"The proprietor above can do nothing whereby the natural servitude due by the estate below may be rendered more burdensome."

* * * *

"He whose estate borders on running water may use it as it runs, for the purpose of watering his estate, or for other purposes."

"He through whose estate water runs, whether it originates there or passes from lands above, may make use of it, while it runs over his lands; but he cannot stop or give it another direction, and is bound to return it to its ordinary channel, where it leaves his estate."

The action of defendant in constructing the terrace was certainly within itself a lawful act, and for the purpose of improving his property, and rendering it better adapted for agriculture; and even conceding that Article 661 of the Code is applicable to surface waters which fall upon the land from the clouds, it must be construed with the preceding article and with the rule of construction which has been universally followed by the Supreme Court of this state in its application of the law to cases where one of the owners of contiguous estates has constructed works for improving and cultivating his land.

The universal rule in this state has been to construe the law so as to reconcile

it with the interest of agriculture (Ludeling vs. Stubbs, 34 La. Ann. 935, and authorities cited; Petite Anse, etc., Dist. vs. Youngsville, etc., Dist., 146 La. 161, 83 South. 445); and where the work is done for the improvement of the property for agricultural purposes, we cannot conceive of its being ordered destroyed unless the person demanding its destruction shows that it will injure his property.

The provisions of Article 661 of the Civil Code do not vest in the proprietor of an estate or in the estate through which a stream flows any right in the bed of the stream which is not a part of the estate, nor in the water which falls upon other estates which may finally reach and become a part of the stream; and even if it be conceded that the same law is applicable to a drain in which there is no water only when it rains, as in the present case, the law does not give the plaintiff any right in the bed of the drain which is on defendant's property, nor in the water which falls on defendant's land, although it may, following the law of gravitation, finally reach the drain; and if the defendant chooses, he may prevent the water from coming into the drain, either by filling the drain or otherwise, and plaintiff could not have any cause of complaint unless he shows injury, as he has no right to be lost.

II.

This proposition involves a question of fact, that is, whether or not the waters falling upon the superior estate, the SW¼ of SE¼ of Section 13, in the area which was formerly tributary to the drain closed, have been diverted into other drains, and, if so, whether to such an extent as to cause the other drains to be overloaded and the waters to spread over plaintiff's property.

The witnesses who were called to testify as to this question were laymen, a majority of whom were only slightly familiar with the properties, many of them having viewed the property of the opponent of the one by whom they were called from the property of the latter, and there was not filed in evidence any map from which it can be ascertained what part of the area of the tract terraced was formerly tributary to the respective drains, or what part of the water which may fall upon the area of the tract has been diverted by the terraces to other drains; but it does appear that at least a portion of the water which fell upon the tract has been entirely diverted from plaintiff's property.

The evidence, it is true, shows that the drains on plaintiff's property have overflowed, especially at the point where the drain on the east of defendant's property, which passes into the NW¼ of NE¼ of Section 24, converges with the drain (which comes into the latter subdivision) from the east; it appearing, however, that the latter drain has a "vastly" greater watershed and that the drains which entered the plaintiff's property, NW¼ of NE¼ of Section 24, from defendant's property, SW¼ of SE¼ of Section 13, and also that the drains at the points where they converge are very shallow.

If it be true, as plaintiff contends, that some of the water which would fall upon the SW¼ of SE¼ of Section 13 in the area tributary to the drain which was closed has been diverted by the construction of the terraces to the west and into the drain entering the NE¼ of NW¼ of Section 24 from the SE¼ of SW¼ of Section 13, and if it is also true, as the evidence shows, that some of the water falling on this area was diverted to the north and did not come upon plaintiff's property,

it follows that less water reached the plaintiff's property, the NW¼ of NE¼ of Section 13, than would have been the case under conditions before the terraces were constructed, and the fact that the drain overflowed and the water spread out over plaintiff's land cannot be considered as a circumstance tending to show that the drain which entered plaintiff's property, NW¼ of NE¼ of Section 24, from the SW¼ of SE¼ of Section 13, was overloaded by water diverted to that drain.

The testimony of the witnesses as to the drains being overloaded is conflicting, as well as their opinion as to the cause, but we find that the evidence does not establish the facts which are the basis of this proposition, and it is unnecessary to consider the legal questions which such facts would present.

The plaintiff, having failed to establish that the work done on defendant's property has rendered the servitude with which it was burdened more onerous, it is unnecessary to consider the claim for damages set up by the plaintiff.

As the evidence does not satisfy us that the plaintiff has not any cause of complaint, we shall not reject her demands.

For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, and it is now ordered, adjudged and decreed that plaintiff's demands be rejected as of non-suit, and that she pay all costs.