143 So. 387

## CALDWELL et al. v. GORE.

### No. 31916.

July 20, 1932.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, for appellant.

Wallace & Hardeman, of Benton, for appellees.

ROGERS, J.

Pursuant to section 25 of article 7 of the Constitution of 1921, the judges composing the Second Division of the Court of Appeal for the Second Circuit have requested instructions on a question of law arising in the case of T. J. Caldwell and J. H. Nattin v. C. L. Gore,[1] No. 4206 of the docket of the court.

The judges of the Court of Appeal find and certify the following facts in the case, viz.:

"Plaintiffs and defendant own adjacent estates. Plaintiffs' is in the State of Arkansas. Defendant's is in the State of Louisiana.

"A natural, shallow drain or depression traverses plaintiffs' land, from north side to south side, extending into and across the

[1] For opinion conforming to answers to certified questions, see 144 So.

northern portion of defendant's land, empty-ing into a lake thereon. Defendant erected a dam across, this natural drain, on his land, which has the effect of impounding water on plaintiffs' estate and withholding it from de-fendant's.

"Plaintiffs brought this suit to have the dam removed. Defendant takes the position that his estate owes no servitude of drain to lands in the State of Arkansas, though ad-jacent to his.

"All parties are residents of the State of Louisiana."

The question on which instructions are de-sired is:

"Under the state of facts above, does de-fendant's estate owe to that of plaintiffs the servitude of drain? In other words, are plaintiffs entitled to the protection of the laws of Louisiana in the right of drainage over de-fendant's land in the same manner they would be if both estates were in Louisiana?"

The case is one of first impression.

There are two rules governing the right of a lower proprietor to obstruct and repel wa-ter flowing from the land of a higher proprie-tor—one being called the common law rule, and the other the civil law rule. 27 R. C. L. § 71, p. 1139.

■ According to the common law rule, no natural easement or servitude exists in favor of the higher estate as to mere surface wa-ter, and the proprietor of the lower estate may lawfully obstruct the flow of the water there-on, even to the extent of diverting the water onto and over the higher estate. Id. § 74, p. 1143.

■ By the civil law rule, the lower estate owes a natural easement or servitude to the upper estate to receive all the natural drain-age thereof, which drainage cannot be inter-rupted or prevented by the proprietor of the lower estate to the injury of the upper estate. Id. § 72, p. 1140.

In some jurisdictions a modified common law rule is followed, based on the maxim that one must so use his own as not unnecessarily to injure others. In those jurisdictions, it would seem that, while surface water may be fended off if this is done reasonably, for prop-er objects, and with due care as regards adja-cent property, no right exists to obstruct its natural flow arbitrarily, wantonly, or unrea-sonably. Id. § 75, p. 1145.

Arkansas, it appears, maintains a modified doctrine, following neither the strict rule of the common law nor the civil law, but apply-ing the law to the circumstances of each case. St. Louis, I. M. & S. R. Co. v. Magness, 93 Ark. 46, 123 S. W. 786; Jackson v. Keller, 95 Ark. 242, 129 S. W. 296; Taylor v. Rudy, 99 Ark. 128, 137 S. W. 574; Morrow v. Merrick, 157 Ark. 621, 249 S. W. 369; Stout Lbr. Co. v. Reynolds, 175 Ark. 988, 1 S.W.(2d) 77.

Louisiana, of course, is governed by the civ-il law rule. Thus, article 660 of the Civil Code provides: "It is a servitude due by the estate situated below to receive the waters which run naturally from the estate situated above, provided the industry of man has not been used to create that servitude. The pro-prietor below is not at liberty to raise any dam, or to make any other work, to prevent this running of the water. The proprietor above can do nothing whereby the natural ser-vitude due by the estate below may be ren-dered more burdensome."

Defendant does not dispute that, if the whole property through which the water in question drains was situated in Louisiana, defendant would not have the right to obstruct its flow.

But defendant argues, in his brief accompanying the application for instructions, that, as each state is an independent sovereignty, the laws of one state do not operate in another ex proprio vigore; that Louisiana cannot create a servitude of drain upon lands in Arkansas in favor of lands in Louisiana and vice versa. Hence such a burden ought not to be placed by Louisiana upon its own lands in the absence of contractual relations with Arkansas, particularly as the difference in the laws of the two states precludes reciprocation on the part of Arkansas.

Although the several states of the American Union are distinct sovereignties, they are nevertheless members of the same political family, which necessarily leads to a more intimate relationship than is usual among independent nations. While foreign in some purposes, the states are united in many others.

Undoubtedly, the paramount duty of a state is to protect its own interests and to promote the welfare of its own citizens. But that duty is not incompatible with a willingness on the part of a state in the interest of amicable interstate relations, to ignore boundaries, and to give effect to private rights and obligations arising along and across a common boundary line when not opposed to considerations of public policy or manifestly injurious to its own citizens.

We are not certain that in their practical application there is the fundamental difference between the laws of Arkansas and Louisiana that defendant seems to find. But, be that as it may, the law that we are called upon to interpret herein is that of Louisiana and not of Arkansas.

The Louisiana law declares that a servitude is due by the lower estate to receive the waters which run naturally from the higher estate, that the proprietor of the servient estate cannot erect any work to prevent the running of the water, and the proprietor of the dominant estate cannot do anything to make the servitude more burdensome. In the absence of any law to the contrary, we see no reason why the servitude should not be extended in favor of land lying immediately across the border in another state. By permitting this, no greater hardship is imposed upon the owner of the servient estate than if both estates were situated in Louisiana; and the rule ordained by nature that water should be allowed, so far as possible, to seek its natural outlet, is recognized and applied.

For the reasons assigned, the question propounded is answered in the affirmative.

O'NIELL, C. J., dissents.