## CALDWELL v. GORE.
### No. 4206.

Court of Appeal of Louisiana. Second Circuit.

Nov. 10, 1932.

Barksdale, Bullock, Warren, Clark & Van Hook, of Shreveport, for appellant.

Wallace & Hardeman, of Benton, for appellees.

McGREGOR, J.

This is a case involving the right of a lower proprietor to obstruct and repel water from the land of a higher proprietor. The plaintiffs, who are residents of Bossier parish, La., are the higher proprietors, and their property which is affected lies in the state of Arkansas. The defendant, who is a resident of Bossier parish, La., is the lower proprietor, and his land lies in Bossier parish, La., directly south of and contiguous to that of plaintiffs.

In their petition the plaintiffs allege: (1) That there is a natural drain from their

property running across that of the defendant, which said drain carries the rain water off the property of plaintiffs over and across that of the defendant; (2) that the defendant is erecting, or about to erect, a dam or obstruction across the said natural drain on the north side of defendant's property a short distance from where it crosses the line between the two properties; (3) that the said dam or obstruction will interfere with the natural drain of their property, and, if completed, will cause a great part of it to be flooded, thereby destroying all the growing crops on their land.

Then, alleging that the obstruction of the said drain in the way described is a nuisance and a violation of law, they pray for a mandatory injunction for the purpose of destroying or removing that part of the obstruction already built and of preventing any further construction thereof.

A temporary restraining order was issued, and a rule was served on the defendant ordering him to show cause at a time named why a preliminary writ of injunction should not be issued restraining and prohibiting him from erecting the said dam and obstruction to the said natural drain.

In his answer the defendant admitted: (1) That there is a drain from plaintiffs' property which carries rain and surface water to and upon his land; (2) that he had partially constructed and erected a dam across the said drain on the north side of his property for the purpose of protecting his said property from the rain and surface water flowing thereon from plaintiffs' property; (3) that, when completed, the said dam would cause an accumulation of rain and surface water above it, which water otherwise would flow upon defendant's property and render it unfit and unsuitable for cultivation; (4) that the said drain is necessary for the protection of his property; that the rain and surface water which would be obstructed thereby accumulates and flows wholly from the state of Arkansas through a ditch constructed by plaintiffs on their property for the purpose of drawing the said water upon and across defendant's property; and that there is no servitude upon defendant's property to receive said drainage under the laws of either Louisiana or Arkansas.

He prayed that the restraining order be dissolved, and that he be awarded damages in the sum of $100 for attorney's fee incurred.

The case went to trial on the issues as thus made up, and there was judgment in favor of the plaintiffs granting a mandatory injunction, ordering the demolition of the dam as constructed, and enjoining the defendant from erecting any dam or obstruction across the said natural drain. From that judgment, the defendant has appealed.

## Opinion.

The defendant, in his answer, practically admits every material allegation of the plaintiffs' petition, but he alleges that the plaintiffs constructed a ditch upon their property that caused the water to flow in greater volume upon and through defendant's land. So that there are two defenses set up against the relief sought by plaintiffs, viz.: (1) Plaintiffs' property, being located in the state of Arkansas, the defendant's estate owes it no servitude of drainage for surface water; (2) by digging the ditch or canal through their property plaintiffs have increased the burden of drainage upon that of the defendant to such an extent as to justify the construction of the dam sought to be enjoined.

In urging their contention that property in Louisiana owes no servitude of drainage to property located in the state of Arkansas, counsel for defendant and appellant state that it would be permissible to build a wall between properties in different states.

This case was first submitted to and argued before the second division of this court. The authorities of Louisiana being silent on the question of the right of the servitude of drainage existing between two estates, one of which is in an adjoining state, the judges who heard the case argued, availing themselves of the provisions of the state Constitution, requested instruction from the Supreme Court on this point. They stated the case as follows:

"Plaintiffs and defendant own adjacent estates. Plaintiffs' is in the State of Arkansas. Defendant's is in the State of Louisiana.

"A natural, shallow drain or depression traverses plaintiffs' land, from north side to south side, extending into and across the northern portion of defendant's land, emptying into a lake thereon. Defendant erected a dam across this natural drain, on his land, which has the effect of impounding water on plaintiffs' estate and withholding it from the defendant's.

"Plaintiffs brought this suit to have the dam removed. Defendant takes the position that his estate owes no servitude of drain to lands in the State of Arkansas, though adjacent to his.

"All parties are residents of the State of Louisiana."

Upon that statement of the point involved they asked the following question: "Under the state of facts above, does defendant's estate owe to that of plaintiffs the servitude of drain? In other words, are plaintiffs entitled to the protection of the laws of Louisiana in the right of drainage over defendant's land in the same manner they would be if both estates were in Louisiana?"

In an opinion which became final on Au-

gust 4, 1932, and which is published in 143 So. 387, the Supreme Court answered the question in the affirmative. That disposes of the first reason urged by the defendant and appellant as to why the relief sought by the plaintiffs should not be granted.

It remains only to determine the question as to whether the plaintiffs constructed a ditch as alleged by the defendant, and, if they did, whether that fact operated to defeat plaintiffs' right to the relief sought. The law of this case is found in article 660 of the Revised Civil Code, which reads as follows:

"It is a servitude due by the estate situated below to receive the waters which run naturally from the estate situated above, provided the industry of man has not been used to create that servitude.

*"The proprietor below is not at liberty to raise any dam, or to make any other work, to prevent this running of the water.*

*"The proprietor above can do nothing whereby the natural servitude due by the estate below may be rendered more burdensome."* (Italics ours.)

This article contains two prohibitions, one against the owner of the upper estate and one against the lower. There are many cases interpreting this article, but, owing to the state of the pleadings, it is not necessary to discuss or analyze them as to their bearing on this case.

The plaintiffs alleged a certain state of facts with reference to the construction of the dam sought to be enjoined herein. The defendant in his answer admits all the pertinent allegations of the petition, but seeks to justify his action in the construction of the dam by alleging a state of facts which, if proved, would show that the plaintiffs had rendered the servitude due by the defendant's land more burdensome.

We have examined the evidence very carefully on this point, but do not find that the plaintiffs have done anything more than what was necessary for agricultural purposes for the proper cultivation of their land. All the water that is drained upon the defendant's property comes along the same natural drain that has always been there. No water is diverted upon his land that formerly drained in another direction through some other natural drain. It is probably true that the cutting of a few ditches along the course of the drain has accelerated and may have increased the flow of the water, but under the decisions of our state this was permissible.

In the case of Becknell v. A. G. Weindhal, 7 La. Ann. 291, it was said: "Although the rule of law was, in Rome as here, that the owner of the upper estate can do no act, by which the servitude on the estate below is rendered more burdensome, by the jurisprudence of that country, he had the right to do all works necessary for the cultivation of his fields, without regard to consequences; he could throw his land in ridges, and give the water-furrows any direction he thought proper; when useful to his crops, he was authorized to accumulate the waters falling upon his lands, in the rear of his field, without being subjected to the action aquæ pluviæ arcendæ."

The cutting of ditches along the line of a natural drain so as to assist the flow of the water is not the diversion of the drain. In the body of the case cited above it is stated that the best portions of the alluvial soil of Louisiana is undulating, and that it is a matter of high public interest that all such low and wet lands in our fields be made useful to man by draining.

But, be that as it may, the defendant had no right to take the law in his own hands. He has violated the plain letter of the very article of the Code which he invokes in his own behalf. He has raised the dam to prevent natural drainage. If the plaintiffs have done something to make his servitude more burdensome upon the defendant, then he (the defendant) should have resorted to the courts, and should have invoked the summary remedy by injunction. Barrow v. Landry, 15 La. Ann. 681, 77 Am. Dec. 199.

For the reasons assigned, the judgment appealed from is affirmed, with all costs to be paid by the defendant and appellant.

DREW, J., recused.