BOLIN, Judge.
Defendants appeal from a judgment of the trial court granting a permanent injunction in favor of plaintiff and against defendants, adjoining landowners, requiring the latter to refrain from interfering with the natural servitude of drain allegedly owed by defendants’ estate in favor of plaintiff’s estate. Plaintiff also asked for damages, and defendants reconvened, alleging drainage from plaintiff’s property had become more burdensome by reason of the fact plaintiff had built a landing strip, resulting in an artificial elevation of his property; further, that defendant in reconvention dug ditches which interfered with the natural flow of water and accelerated and concentrated the water flowing on the property of plaintiffs in recon-vention, causing damage in the amount of $1,500. Prior to trial on the merits, a rule for preliminary injunction was heard and was granted as prayed for by plaintiff.
Although the trial judge did not mention plaintiff’s claim for damages nor defendants’ reconventional demand in his reasons or judgment, both such claims were rejected apparently for lack of sufficient proof. Plaintiff has not appealed nor answered the appeal but only seeks affirmation of the judgment. For reasons which we will hereinafter assign, we think the result reached by the lower court is correct.
Although the evidence adduced during the preliminary hearing was not transcribed, the judge (Judge Russell) assigned written reasons for his judgment, commenting therein upon the evidence and the law. Our review of the testimony taken on the trial on the merits convinces us it was essentially the same as that presented on the rule and that the conclusions reached by Judge Russell reflect a correct statement of the evidence and the law. His opinion also reflects that, at the request of counsel, the judge personally inspected the property in question.
The issue confronting us is primarily: Which estate, if either, owed a servitude of drainage to the other, and was the servitude properly exercised? Secondarily, we must decide whether appellants are entitled to an award for damages.
Appellants allege as error the trial judge’s finding plaintiff acquired a servi *824 tude by prescription which gave him the right to divert the water through the ditches. For reasons which will be apparent later, we pretermit a discussion of this issue except to say we find prescription inapplicable in the instant case.
Numerous witnesses testified regarding the elevation of the respective tracts but it now appears to be undisputed the property of plaintiff is higher in elevation than defendants’ and water has always drained onto the lower property, thus creating a natural servitude of drain under the provisions of the first paragraph of Louisiana Civil Code Article 660:
“It is a servitude due by the estate situated below to receive the waters which run naturally from the estate situated above, provided the industry of man has not been used to create that servitude.
“The proprietor below is not at liberty to raise any dam, or to make any other work, to prevent this running of the water.
“The proprietor above can do nothing whereby the natural servitude due by the estate below may be rendered more burdensome.”
We next consider the question of whether the natural servitude has been rendered more burdensome by the manner of construction and location of the ditches; and further, whether construction of the airstrip caused an increase in the amount of water draining onto defendants’ land.
Plaintiff’s first witness, Irby Meredith, an oil and gas inspector for the Department of Conservation, Caldwell Parish, owned the property adjoining plaintiff’s land on the north. He testified he was acquainted with the natural drainage of all three farms and that plaintiff’s property had a ridge about one-half mile long located approximately in the middle of the tract, which causes water on the north side of the slope to drain onto his, Meredith’s, property and water on the south to drain onto the Childress place. Further, he stated that, although a number of loads of dirt had been placed on this ridge on plaintiff’s property to form a landing strip, in his opinion it had caused more water to drain onto his, Meredith’s, property but caused no more drainage onto defendants’ land. On cross-examination this witness testified he had been living on his farm since 1932 and there had been some ditches on the Long property as long as he could remember. He stated Long might have renewed the ditches but the “big ditch” (apparently the canal type ditch running across defendants’ south border) had also been there “ever since” he could remember.
Plaintiff concedes the two ditches, which he deepened and caused to converge before entering defendants’ land, were made by him when he had defendants’ property under lease for farm purposes in 1958, 1959 or 1960. While denying that more water was expelled onto defendants’ farm than before, he admitted the water would “just go on at a different timing”, i. e., it would be slower getting on and off if the ditches were not there, but the water would still have to go there.
Plaintiff also acknowledges the water from his fields through the ditches made the Childress road muddy and probably washed it out; that it was his intention to attempt, by this suit, to get Miss Child-ress to build drainage canals and culverts to take care of the water draining south from his land; that since issuance of the preliminary injunction the ditch has been opened by defendants but lacks six or eight inches of being as deep as when he first excavated it. He testified that no more water is flowing on her property than did before the previously described activities took place.
Miss Childress, the only one of defendants, who testified, stated she had the soil placed on her road, which she or her tenants used to traverse her farm *825 from back to front, in order to fill in a “mudhole” caused by the concentration of water flowing onto her road and washing it out after heavy rains; that the dirt did in fact stop up one of the ditches carrying water from plaintiff’s land, but that she had the dirt spread on the road and removed the dirt from the ditch at the suggestion of her attorney after the hearing on the preliminary injunction.
In support of defendants’ claim for damages, Miss Childress testified the property had been owned by defendants for about 40 years; that at present and at the time of the occurrence of the events related above, the Childress property was rented to another who farmed it; that she observed the crops the past season and they were very poor due to excessive water and they had to be replanted; that two or three hundred loads of dirt had been hauled onto plaintiff’s land to build the landing strip, as well as to landscape around plaintiff’s house, so that much more water flowed onto defendants’ property; additionally, the ditches which had been made by plaintiff concentrated an excessive amount of water in spots causing her farm road to be impassable and her tenant to be unable to get his cotton out in that area. There was some corroboration of this testimony by the tenant and his son but neither was aware of conditions existing prior to the events precipitating the present suit.
Our review of the record convinces us the construction of the landing strip did not materially increase the amount of water draining from the upper estate to the lower estate.
In determining whether the ditches excavated by plaintiff caused the servitude to be more burdensome we are assisted by the decisions in a number of Louisiana cases, interpreting the third paragraph of La.C.C. Art. 660, in which the identical issue was settled. As early as 1860 the Louisiana Supreme Court, in Sowers & Jamison v. E. Shiff, et al, 15 La.Ann. 300 (1860) passed upon this issue and construed the provision liberally in favor of the proprietor of the superior estate. Although Article 660 forbids the proprietor of the dominant estate from doing anything whereby the servitude due by the servient estate is rendered more burdensome, the rule has been modified in cases involving agricultural estates so as to permit the proprietor of the upper estate to make all drainage works which are necessary to the proper cultivation and agricultural development of his estate. To accomplish this he may cut ditches and canals by which the water running from his estate may be concentrated and its flow increased beyond the slow process by which it would ultimately reach the same destination; but it cannot be diverted onto the lower lands at a point which would not be its natural destination. Guesnard v. Executors of Bird, 33 La.Ann. 796 (1881); Petite Anse Coteau Drain. Dist. v. Youngsville Drain. Dist., 146 La. 161, 83 So. 445 (1919); Broussard v. Cormier, 154 La. 877, 98 So. 403 (1923); Cornett v. Hebert, 31 So.2d 446 (La.App.1st Cir. 1947).
We find Louisiana Civil Code Article 660, quoted supra, and the cases interpreting this article define with clarity the duties of the two adjoining landowners. Accordingly, we affirm the judgment of the lower court rejecting all demands for damages and granting the permanent injunction restraining defendants from interfering with the servitude of natural drain and forever enjoining defendants from maintaining or allowing to exist, in such a manner as to effectively prevent the drainage of water from plaintiff’s land on to defendants’ estate, any type of earthen dam, dyke or levee. Defendants are cast with cost of this appeal.