See, also, Bonnabel v. Metairie Cypress Co., 129 La. 928, 57 So. 271; Bacas v. Mandot, 3 Orleans App. 324.

Our conclusion is that plaintiff was not seeking bona fide to collect his rent, when he called at defendant's store on January 2, 1928; that he had no expectation of finding any one on the premises when he called; that his sole purpose in going there on that day was to make out a case of apparent default on the part of defendant in paying his rent, and for the purpose of bringing this suit; that the judgment of the lower court rejecting his demand is correct.

Decree.

The judgment appealed from is therefore affirmed.

O'NIELL, C. J., takes no part.

(118 So. 65)

No. 28925.

**OGDEN v. POLICE JURY OF EAST BATON ROUGE PARISH.**

July 2, 1928.

Cross & Moyse, of Baton Rouge, for appellant.

H. Payne Breazeale, of Baton Rouge, for intervener appellant City of Baton Rouge.

Charles A. Holcombe and C. C. Bird, both of Baton Rouge, for appellee.

THOMPSON, J. The plaintiff owns some lots and a small tract of land, constituting a subdivision known as Ogden Park, situated directly eastward and adjacent to the city of Baton Rouge.

There is also an improved subdivision, known as Edgewood Lawn, which lies northeast of the city of Baton Rouge, and north of the property of the plaintiff.

In March, 1926, certain taxpayers owning property in the Edgewood Lawn subdivision petitioned the police jury to create said subdivision into a road district, which was accordingly done by ordinance of said jury adopted on April 13, 1926. The district is designated as subroad district No. 1 U.

The purpose for which said road district was created, as suggested in the petition and declared in the ordinance of the police jury,

was to curb and gutter, gravel, and storm sewer the streets of said subdivision, designated as Edgewood Drive, Morrison, Teddy, Wilson (or Bryan), Hummel, and Stevens, to curb and gutter, gravel, and 'storm sewer north 20 feet on Woodlawn Drive, curb and gutter and storm sewer on the east side of Fryoux street and the west side of Le Jeune and south side of Phelps street.

In due course an election was held in said district, and a bond issue of $22,000 was authorized to carry out the purpose for which the district was created.

Thereafter, some time in May, the police jury, after due advertisement, entered into a contract with Robert E. Thibodeaux to perform the work contemplated and required under the ordinance creating the said road district.

The contractor was proceeding to carry out his contract, but in such a manner as to affect the drainage outside and beyond the territory embraced in the road district, when this suit was filed asking for an injunction against him and against the police jury.

The plaintiff, in an elaborate petition, substantially charges:

That the police jury, under the guise and pretense of laying curbs and gutters and storm sewers in the said subroad district, intends to divert the drainage of said road district, or said Edgewood Lawn subdivision, from the natural direction of its flow, and to carry it, by running 24-inch pipe line from the south boundary of said road district, outside thereof to the open ditch on the north side of the Greenwell Springs road, which lies 500 feet or more south of the road district, and to conduct said drainage west along said Greenwell Springs road and through a culvert or culverts under said road into a large canal which runs along the Jefferson Highway in front of petitioner's property.

That, in order to conduct the drainage as stated, it will be necessary to dig, at some points between Edgewood Lawn and the Greenwell Springs road, to a depth of more than 4 feet, and there bury the pipe line. That it will also be necessary to deepen and widen the ditch along the north side of Greenwell Springs road and the culvert under said road in order to accomplish said purpose.

That in order to divert the drainage of Edgewood Lawn into the drainage canal of the Jefferson Highway, it is necessary to pierce and to cross through the natural divide which separates the drainage towards the University Lake and the drainage towards what is known as Ward's creek, part of which latter drainage consists of the said drainage canal along the Jefferson Highway.

That the said canal, which naturally drains into Ward's creek or Perkins' swamp, is the only means of drainage and of carrying off the surface waters and rainwater from Ogden Park, and from the grounds of the Central High School lying just west of the petitioner's property, and from several other popular suburbs west of said park.

That the aforesaid drainage canal along the Jefferson Highway is now taxed to its capacity to carry off the ordinary surface water of the subdivisions and property which naturally drain into it.

That any increase in the amount of water discharged into said drainage canal would cause, with every rain, a complete overflow of the petitioner's property.

That the diversion of said drainage and sewerage disposal will overflow and interfere with the use of the property, and that the school board, which is erecting a $500,000 school building adjoining the property of the petitioner, has petitioned the police jury against the unwarranted diversion.

It is further alleged that Edgewood Lawn now drains through an enormous concrete box culvert running from a point near the northeast corner of said Edgewood Lawn in a westerly direction to University Lake; that

the bottom of the said culvert is 3 feet lower than the present bottom of the culvert which crosses under the Greenwell Springs road.

The police jury answered, denying any purpose or intent to divert the drainage by guise or pretense, but alleged:

That it was designed to drain a portion of the surface of the road district into University Lake and to carry the balance of the water originating in said road district, or coming into it by natural means, across the Greenwell Springs road and south through the natural drainage across said road and south, as is its right under the laws of the state.

That the water handled by such drainage could readily be conducted by the natural drainage of said territory down to and across the Greenwell Springs road without resorting to the digging referred to by plaintiff. That the manner of caring for the drainage adds nothing to the burden of plaintiff or other lower proprietors, and does not increase the servitude of drain enjoyed by said road district as the dominant proprietor.

It is alleged that the drainage cared for by the concrete box culvert at the northeast corner of Edgewood Lawn is wholly artificial, that prior to the opening of this drain into said lake, there was no natural drainage whatsoever west from Edgewood Lawn, but that originally the only natural drainage of said area was south across the Greenwell Springs road and through the natural drain leading south.

It is further alleged:

That there is a natural divide between the territory of said road district and the University Lake, which many years ago was pierced artificially in order that the waters from the area within said road district might run west into the drain that finally emptied into the Mississippi river, but of recent years has been levied so as to form the University Lake.

That between said road district and the lake on the west, on the north, and on the east are natural elevations or divides that slope respectively, east, south, and west into the area of said road district, causing the waters naturally to flow into said road district, and on south as originally the only normal and natural way by which said territory between these divides, forming the watershed of this prong of Ward's creek, might be drained.

The city of Baton Rouge intervened in the suit, and joined with the defendant in opposing interference with the action of the police jury in its efforts to furnish drainage facilities to the Edgewood Lawn subdivision.

There was judgment in the lower court perpetually enjoining the police jury, as the governing body of subroad district No. 1 U, and Robert E. Thibodeaux from taking any further steps or doing any further acts outside the boundary of said road district that will effect, or tend to effect, the diversion of the drainage of said road district into the ditch along the Greenwell Springs road, or across the said road, or into the Jefferson Highway drainage ditch or canal, or that will tend to throw the surface waters or drainage of said road district upon the property of plaintiff.

There are no seriously controverted propositions of law in the case. The defendant does make the contention that the road district should be likened to a gravity drainage district, and that the action of the police jury might readily be considered the beginning step in opening up the proper drainage of the gravity drainage district, which involves merely the exercise of the police power, and that, if the plaintiff's property should be seriously injured or damaged by the contemplated improvements of drainage conditions, such damage would be damnum absque injuria.

But the fact is, that the territory sought to be drained is not a drainage district, and was not intended to be such. It is purely a sub-

road district, and no ordinance or resolution of the police jury authorized or provided that the district should be drained in the manner as attempted by the contractor.

The Civil Code provides, article 660, that a servitude is due the estate below to receive the waters which run naturally from the estate situated above, provided the industry of man has not been used to create that servitude. And the proprietor above can do nothing whereby the natural servitude due the estate below may be rendered more burdensome.

■ Therefore, conceding for present purposes that Edgewood Lawn was the superior or dominant estate, and conceding that the road district was clothed with the authority of a drainage district, it could not, in the exercise of that power, impose a greater burden on the property below by increasing the flow of water for the benefit of the road district.

■ The rights of the police jury in the matter of drainage of public roads are no greater than those of the individual proprietor of an upper estate.

In this connection, we may refer to Petite, etc., Drainage District v. Youngsville, 146 La. 161, 83 So. 445, where it is said:

"One drainage district had no right to open an artificial channel in its lands which tended so to increase the flow of water therefrom as to exceed the drainage capacity of coulees and ditches of a lower lying district and to flood its lands."

It seems to be agreed by all parties that Edgewood Lawn is a kind of basin or reservoir for the surface water flowing from several hundred acres. A statement is made to the effect in plaintiff's brief, and the defendant's counsel, in their brief, say Edgewood Lawn was formerly a buttonwood slash, typical of the low, marshy area that forms the head waters of the various branches of Ward's creek east of the city.

It is also conceded, or is established by the evidence, that, at the time of the creation of the road district, the drainage from Edgewood Lawn was through a large concrete box culvert at the northeast corner of the subdivision and into a body of water presently known as University Lake.

We think it also clearly appears from a preponderance of the evidence that the system of drainage contemplated by the police jury will materially increase the natural flow of water, will overtax the capacity of the present ditches and outlets, and subject the plaintiff's property and that of others south of the Greenwell Springs road and along the Jefferson Highway to overflow and damage.

■ The pivotal issue in dispute is, What was the original natural drainage of Edgewood Lawn? Was it south across the Greenwell Springs road and through the Brunot Canal, or was it west through the northeast section of the city of Baton Rouge into what was originally known as Bayou Grasse and thence west into the Mississippi river?

It is the contention of the defendant that there are two watersheds in the territory northeast and east of the city of Baton Rouge, one which is restricted in its area, but which drains into the University Lake. It might be well to state here that many years ago a dam was laid across Bayou Grasse, thus closing the flow into the Mississippi river, and the separated bayou became known as University Lake. The other watershed is said to be a half-mile northeast of the city, and which drains south into Edgewood Lawn, and that formerly the natural drainage of the said subdivision was south across Greenwell Springs road, etc.

The plaintiff, on the other hand, contends that there is a divide or elevation south of Edgewood Lawn and north of the Greenwell Springs road, and that the natural drainage, prior to any improvements or artificial means of drainage, was from the Edgewood Lawn territory west and into the bayou which afterwards became University Lake.

It is in support of their respective contentions that the greater part of the testimony was directed, and many of the oldest residents and a number of civil engineers were called to testify on either side. This testimony is so voluminous that we shall not attempt the task of quoting from or to refer to it at any great length.

Mr. W. D. Woodward, a civil engineer, ran the levels and made a record of the elevations he found in Edgewood Lawn and territory contiguous. This record or map shows the levels immediately north of the Greenwell Springs road as well as those in Edgewood Lawn. He testified that the levels and elevations show the slope of the terrain immediately north of the Greenwell Springs road to be in a westerly direction, that the ground just north of the road referred to in some places is higher and in others lower, but that the general slope of the land is from the Greenwell Springs road back towards Woodland drive.

Mr. L. Q. Huey, another civil engineer, testified that he was with Woodward when he took the levels and elevations; that he checked them over and found them correct. He testified that there was a divide on the south side of the Greenwell Springs road, and that there was a general slope west towards the city of Baton Rouge. He testified that some water from Edgewood Lawn goes into a canal on Phelps street, which drains into the city culvert, and that the balance went into the ditches along Woodland drive and thence along Fryoux street to the city culvert at Center and Fryoux streets; that there are no ditches leading toward the Greenwell Springs road.

When asked what would be the effect on the drainage due to the work in progress of the contractor Thibodeaux, the engineer answered that he was cutting a hill to get the drainage to the Greenwell Springs road, and that the ditch, if completed, would throw all the water coming from the north and northeast to the Greenwell Springs road instead of going through Woodland drive as it now does.

The testimony of the two engineers named is supported by that of A. F. Cazedessus, Peter Sanchez, Morton Combonzon, Jules Fryoux, and Robert Bogan, A. F. Sanchez, and Dr. Charles F. Duchein, all of whom, for many years, have been acquainted with the territory embraced in Edgewood Lawn; and, with but little variation, they all say that the natural slope and drainage, prior to any improvements, was from the said territory into the bayou which later became University Lake.

Mr. W. P. Connell, president of the Louisiana National Bank, testified that Edgewood Lawn drains west into University Lake. He also testified that he was acquainted with the plaintiff's property and with the ditch along the Jefferson Highway, and that it could not take on any more water than normally flows through it without overflowing.

As opposed to this testimony, the defendant introduced two engineers who are brothers, one of whom is the engineer for the Edgewood Lawn road district, and the other is assistant engineer for the state highway department.

Mr. A. G. Mundinger, engineer for the road district, testified that he prepared the plans and specifications for the work to be done in the district. He also assisted Mr. Kleinfeter, assistant city engineer, in preparing a map showing the natural contours and drainage areas in the vicinity of Edgewood Lawn; that the elevations shown on the map were all taken on what he considered to be the natural surface of the ground, and, according to those contours, the drainage would be south from Edgewood Lawn.

This witness stated, on cross-examination, that the system of drainage proposed outside of the road district will increase the amount or volume of water that normally flows or is thrown on the Greenwell Springs road, and

that the water which flows west from Edgewood Lawn will be decreased proportionally.

Mr. John J. Mundinger, assistant state highway engineer, gave about, or substantially, the same testimony as his brother, the road district engineer.

Mr. J. W. Monget, another assistant engineer for the state highway commission, testified that he has been acquainted with the Edgewood Lawn territory for 50 years; that when he first knew it, it was the head or source of Dowson's creek; that it had a watershed on the east and north and on the west; that its only outlet was towards the south and across the Greenwell Springs road.

The names we have mentioned cover practically all of the witnesses whose testimony have any special significance or bearing on the case; and, while we have merely referred in a cursory and general way to what each witness testified, we have examined and reviewed the entire testimony, and find, as did the district judge, that the great preponderance of the testimony is with the plaintiff.

For the reasons assigned, the judgment appealed from is affirmed.

BRUNOT, J., recused.