180 So.2d 30 (1965)
William B. HAMILTON, Plaintiff-Appellee,
v.
CITY OF SHREVEPORT, Defendant-Appellant.
No. 10196.
Court of Appeal of Louisiana, Second Circuit.
October 28, 1965.
Rehearing Denied November 30, 1965.
Writ Refused January 18, 1966.
*31 J. N. Marcantel, John Gallagher, J. Bennett Johnston, Jr., Shreveport, for defendant-appellant.
Wilkinson, Lewis, Madison & Woods, Dimick & Hamilton, Shreveport, for plaintiff-appellee.
Before GLADNEY, AYRES, and BOLIN, JJ.
AYRES, Judge.
Plaintiff in the instant case and plaintiffs in the cases consolidated with it, Tracy v. City of Shreveport, La.App., 180 So.2d 37, and Wilkinson et ux. v. City of Shreveport, 180 So.2d 37, of the docket of this court, were awarded judgments for damages arising from the City's manipulation and raising of the floodgates at the dam which it maintains to impound the waters of Cross Lake, causing plaintiffs' properties to be inundated, eroded, and washed away.
*32 On appeal, this court sustained the City's defense of sovereign immunity and dismissed plaintiffs' appeal (La.App., 168 So.2d 380 and 388). However, on plaintiffs' application to the Supreme Court, writs of certiorari were granted limited to the respondent's immunity in view of the provisions of Section 35 of Article 3 of the Constitution, as amended by Act 621 of 1960 (246 La. 917, 168 So.2d 824). Upon trial of this issue in the Supreme Court, the plea of immunity was overruled and, accordingly, the judgment of this court was reversed and the cause remanded for further proceedings (247 La. 784, 174 So.2d 529, 533).
The issues remaining for determination concern primarily defendant's alleged negligence especially pointed up in its exception of no cause and of no right of action and the application of certain legal principles to the facts.
Plaintiffs in these consolidated cases are the owners of three contiguous tracts of land situated upon a peninsula projecting into Cross Lake and known as Willow Point. The Hamilton tract, with a lake frontage of 200.4 feet and an average depth of 189.6 feet, contains .866 of an acre; the Tracy tract, with a frontage of 50 feet, a rear width of 150 feet, and an average depth of 180 feet, .509 of an acre; and the Wilkinson tract, with a frontage of 406.31 feet and an average depth of 263.4 feet, 2.6 acres. These tracts extend down to the 172-foot contour line above mean Gulf level, below which the City of Shreveport, by virtue of Acts 31 of 1910, 149 of 1920, and 39 of 1926, owns all lands and is authorized and empowered to impound water thereon not to exceed the 172-foot contour line for the purpose of providing a water supply for the City.
Plaintiffs' causes of action are predicated on the alleged arbitrary action of the defendant on or about January 20, 1962, in closing or raising the floodgates controlling the water level of the lake, the level of which was, without notice to plaintiffs and the other owners of properties fronting on the lake, raised to a new and higher level to such an extent that plaintiffs' properties were encroached upon and inundated, the bank or shoreline of which was immediately eroded, disintegrated, and washed away. This act of the City was alleged to have been persisted in despite notice of the damage being inflicted and request for a reasonable delay to afford plaintiffs an opportunity to protect their properties.
The exceptions of no cause of action are directed at the alleged deficiency in plaintiffs' petitions, in their failure to charge defendant with negligence. It is conceded that petitioners do not, in their allegations of fact, specifically characterize or label the alleged wrongful acts charged to defendant as negligence. However, a general allegation that the City or its agent was negligent is unnecessary. It is sufficient that facts are alleged that constitute negligence.
Rauschkolb v. DiMatteo, 190 La. 7, 181 So. 555 (1938);
Chachere v. Moses George & Son, 165 So. 522, La.App., 1st Cir 1936;
Metropolitan Life Ins. Co. v. Mundy, 167 So. 894, La.App., 1st Cir. 1936;
Frierson v. Shreveport Grocery Co., 3 La.App. 44 (1925).
For instance, it was held in the Frierson case that it is not necessary to label pleadings as pleas of contributory negligence if facts are set up that constitute contributory negligence, and in the Mundy case that, to recover on the ground of fraud the amount of life insurance policies paid to avoid succession, the insurer was not required to specifically allege fraud, but that allegations of fact sufficient to establish fraud were adequate. Moreover, it is well settled that a general allegation of negligence *33 is merely the pleader's own conclusion of law.
Pizzitola v. Letellier Transfer Co., 167 So. 158, La.App., Orleans 1936;
Loprestie v. Roy Motors, Inc., 191 La. 239, 185 So. 11, 13 (1938).
Furthermore, no cause of action is stated by alleging conclusions of the pleader or conclusions of law.
State v. Hackley, Hume & Joyce, 124 La. 854, 50 So. 772 (1909);
Moss v. Drost, 130 La. 285, 57 So. 929 (1912);
Arent v. Liquidating Com'rs of Bank of Monroe, 133 La. 134, 62 So. 602 (1913);
Vaccaro v. Favrot, 170 La. 483, 128 So. 284 (1930);
Succession of Stafford, 191 La. 855, 186 So. 360 (1939);
In re Phoenix Building & Homestead Ass'n, 203 La. 565, 14 So.2d 447 (1943);
Latham v. Latham, 216 La. 791, 44 So.2d 870 (1950);
Florida Molasses Co. v. Berger, 220 La. 31, 55 So.2d 771 (1951);
West Carroll Nat. Bank of Oak Grove v. West Carroll Par. Sch. Bd., 136 So. 2d 699, La.App., 2d Cir. 1961.
Turning now to a consideration of the question as to whether plaintiffs' petitions disclose causes of action, we may first observe that similar allegations are contained in all three suits. In the instant case, plaintiff's petition contains the following allegations of fact:
"Petitioner avers that on or about January 20, 1962, defendant arbitrarily and without any notice to the owners abutting Cross Lake, closed or raised the floodgates controlling the level of Cross Lake to a new and higher level, increasing the level of the lake by a height of approximately one foot or more, above the former level of the lake.
"Petitioner avers that immediately after the raising of the height of the flood control gates, and caused thereby, the waters of Cross Lake, additionally increased in height and strength by the force of the wind, encroached upon and inundated petitioner's property, and the shoreline or bank of the property immediately began to erode and disintegrate.
"Petitioner avers that William J. Hunter, petitioner's vendor, and the owner of considerable property on Cross Lake, contacted Mr. L. E. Phelps, the then Commissioner of Public Utilities of defendant, and requested that the gates be restored to the former level at least for a short time in order to permit the property owners to take necessary steps to protect their property from the rapid erosion of the shoreline that was taking place. However, this request was denied."
In addition thereto, it is alleged that, prior to this action on the part of the defendant, the properties of plaintiffs had never suffered any damages whatsoever by the erosion caused by the lake waters. Despite the warning given to defendant that its action was inflicting damage upon plaintiffs, and that a short delay in increasing the water level on the lake would enable plaintiffs to protect their properties, the defendant nevertheless persisted in its determination to raise the level of the water without regard for the rights of plaintiffs. These allegations are sufficient to state a cause of action for damages allegedly sustained as a result of defendant's acts. Accordingly, the exceptions referred to the merits were properly though impliedly overruled.
It may be appropriate to observe, under LSA-C.C. Art. 2315, that
"Every act whatever of man that causes damage to another, obliges him *34 by whose fault it happened to repair it; * * *";
and that a servitude of natural drainage exists, under LSA-C.C. Art. 660, wherein it is stated:
"It is a servitude due by the estate situated below to receive the waters which run naturally from the estate situated above, provided the industry of man has not been used to create that servitude.
"The proprietor below is not at liberty to raise any dam, or to make any other work, to prevent this running of the water.
"The proprietor above can do nothing whereby the natural servitude due by the estate below may be rendered more burdensome";
and that, pursuant to LSA-C.C. Art. 667:
"Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."
While a finding of fault as a requisite to an award of damages may be, and is generally, predicated upon negligence, it is not necessarily so. Awards may as well be predicated upon willful, wanton, or intentional acts. Thus, it was held in Gulf Insurance Co. v. Employers Liability Assur. Corp., La.App., 170 So.2d 125, 129 (1965), that
"* * * the violation of the duty set out by Article 667 constitutes `fault' within the meaning of Article 2315, or as said in Hauck v. Brunet supra [La.App., 50 So.2d 495 (1951)] `the damage itself to the neighboring property constituted fault',"
and that
"While negligence is an example of `fault' within the meaning of Article 2315, it is well settled that the obligation imposed upon proprietors by Article 667 is absolute and that proof of negligence is not required in order to recover for a violation or breach thereof. (See Selle v. Kleamenakis, La.App., 142 So.2d 50, 51; Bruno v. Employers' Liability Assur. Corp. Limited, La.App., 67 So.2d 920; Hauck v. Brunet, La.App., 50 So.2d 495)." [170 So.2d 125, 127.]
Defendant contends, however, that LSA-C.C. Art. 667 has no application to municipalities, and that the courts have been reluctant to extend the application of the article, as set forth in Hauck v. Brunet, La.App., 50 So.2d 495 (1951), to municipalities. Cited in support of this proposition is Beck v. Boh Bros. Const. Co., 72 So.2d 765, La.App., Orleans 1954. The statement in the cited case to the effect that the article was inapplicable to municipalities was obiter dictum because the court found that the operation of a concrete mixer on one of the streets of the City of New Orleans had no causal connection with the damages claimed by plaintiff.
The district judge in the instant case, in written reasons for judgment, cited numerous decisions of the Supreme Court holding that Art. 660 of the Civil Code is applicable to municipalities.
"In a long line of decisions beginning in 1812, it has been held that a municipality is liable for its obstruction of natural watercourses or drains under Art. 660 of the Civil Code. Orleans Nav. Co. v. City of New Orleans, 2 Mart. (O.S.) 214; Bowman v. City of New Orleans, 27 La.Ann. 501 (where the city was held liable for closing outlets for drainage of water from an embankment above the city in Jefferson Parish and flooding resulted when rain fell. The court there said, `The City of New Orleans, having authorized the illegal acts of her agents, is in no better position than any other person, and is responsible for the losses occasioned *35 thereby.'); Petite Anse Coteau Drainage Dist. v. Youngsville Drainage Dist. of the Parish of Lafayette, 146 La. 161, 83 So. 445; Ogden v. Police Jury of East Baton Rouge Parish, 166 La. 869, 118 So. 65 (where the court held a police jury could be enjoined, as could any private individual, from interfering with natural drainage); Chandler v. City of Shreveport, 169 La. 52, 125 [124] So. 143 (where a private property owner was allowed to restrain the city from building culverts under a roadway which would discharge water on his property. The court there said, `The general rule is that a municipality cannot, without rendering itself liable for the resulting damage, exercise its right to construct sewers and grade or otherwise improve streets so as to collect surface water in artificial channels and discharge it in increased quantities or in new and destructive currents upon private property. It is the duty of the municipality to take care of the water so accumulated if reasonably practicable.'); and Adams v. Town of Ruston, 194 La. 403, 193 So. 688 (where the city was held liable in damages for the increased discharge of water over plaintiff's property from a city-run swimming pool)."
The aforesaid principles, it seems would have equal application to circumstances arising under the provisions of LSA-C.C. Art. 667. We know of no sound basis for concluding otherwise.
In this connection, this court expressed a similar view in Kendall v. State Through Department of Highways, 168 So.2d 840, 842-843 (1964), when it stated:
"The trial court in its `Reasons for Judgment' stated: `The evidence is clear that in the construction of Interstate Highway No. 20 and in the performance of its governmental function in the construction of said highway damage was inflicted upon the property of the plaintiff and the plaintiff is entitled to recover for that damage, regardless of whether we place her demand upon the basis of Article 667 of the LSA-Civil Code or upon the requirement of the Constitution that the State pay damages to those whose property it has damaged in carrying on its public work.
"`We say that it makes no difference which of the two legal provisions we follow as a basis for liability as to the State.'
"We are in agreement with the trial judge's conclusion. Regardless of whether the cause of action arose out of Articles 2315 or 667 of the LSA-Civil Code, whenever a governmental agency engages in an undertaking with a public purpose and public benefit which directly results in a damaging of private property the `or damaged' provision of the above quoted constitutional article is self-operating and creates a cause of action.
"Authority for the above stated legal principle is to be found in Murff v. Louisiana Highway Commission, 19 La. App. 847, 140 So. 863 (2nd Cir. 1932); Jarnagin v. Louisiana Highway Commission, La.App., 5 So.2d 660 (2nd Cir. 1942); Nagle v. Police Jury of Caddo Parish, 175 La. 704, 144 So. 425 (1932); Dickinson v. City of Minden, La.App., 130 So.2d 160 (2nd Cir. 1960); Connolly v. Louisiana Highway Commission, 177 La. 78, 147 So. 505 (1933)."
Nor has any reason been advanced, and we know of none, why a municipality's immunity from suit and liability granted pursuant to the amendment of Article 3, Section 35 of the Constitution should not apply to its liability under LSA-C.C. Arts. 660 and 667, as well as to liability under LSA-C.C. Art. 2315. No exception is made by this constitutional provision.
A general rule prevailing in other jurisdictions is that one who obstructs a watercourse by a dam, embankment, or other *36 structure must use reasonable care and skill in so doing and in maintaining it so that it will not be the means of injuring another, either above or below by either throwing the water back or by being incapable of resisting it under ordinary conditions which could be reasonably anticipated or guarded against.
56 Am.Jur., "Waters," § 31, p. 520.
However, a rule prevalent in other states is that one who obstructs a natural watercourse or places a structure therein, even in the exercise of a lawful right to do so, must take proper precautions to prevent injury therefrom to others by the action of anticipated floods.
56 Am.Jur., "Waters," § 32, p. 521; 93 C.J.S. Waters § 18, p. 621, and § 24, p. 634.
These rules are consistent with the principles set forth in the various articles of our Civil Code to which we have heretofore referred and quoted.
Certain of the material facts were recounted in the original opinion rendered when this cause was initially before us and they need not now be reviewed in greater detail. It is deemed sufficient to state that the record amply supports plaintiffs' position and establishes that the damages sustained resulted from defendant's acts in raising the water level of the lake and in refusing to lower it when plaintiffs' properties began to inundate and erode. In this connection, it would appear appropriate to point out that defendant failed and refused to make use of the new controls on the floodgates installed to facilitate the prompt lowering of the water level under circumstances such as existed at that time.
Therefore, the conclusion that plaintiffs sustained damage to their properties in the manner alleged is not only abundantly established but is not controverted by the defendant. During the many years the lake was maintained as a source of water for the City prior to the occasion of which plaintiffs complain, the record does not disclose at what level the water was maintained in the lake. However, no damage was caused during that period. But, during the first five months of 1962, due to the rains and waves customary for that season, the water level on several occasions exceeded the 172-foot level.
At the time of the flooding of plaintiffs' properties, the dam, according to an affidavit of defendant's superintendent-engineer of the Department of Water and Sewerage, had been raised to a point at which the water in the lake could be maintained at the level of 171.62 feet above mean Gulf level. The engineer admitted, however, that on several occasions during recent years the waters of the lake had exceeded the 172-foot level during the months from January to June, but that, on the date in question the water of the lake did not rise above that level. It was, however, conceded that, when the lake is kept at the level indicated, the actions of winds and waves combine to encroach upon property of the riparians. During the period of time presently concerned, no unusual or excessive winds or rains were encountered; they were of the kind generally prevailing and to be expected during that season of the year.
In brief, and in brief only, as there are no pleadings to that effect in the record, defendant asserts that it has acquired by 10-year prescription, under LSA-C.C. Art. 765, the right to subject the riparian property to the normal wash and erosion from the lake so long as the lake is maintained at a point not to exceed the 172-foot level. This contention is without merit. There was, as stated, no plea of prescription and no defense urged on that basis. Moreover, no factual basis was established for such a plea.
On the facts established by the record, the City must be held liable for its maintenance of the lake at a level at which, as an unnecessary and undeniable consequence thereof, the waters of the lake will, in times of ordinary and expected wind and *37 rain, cause damage to property above the 172-foot mean Gulf level which constitutes the boundary between defendant's property and that of those whose properties front on the lake.
The damages awarded plaintiffs are uncontroverted.
We note, however, that the defendant municipality was assessed with the costs of court. This was erroneous. A municipality is exempt from the payment of such costs except stenographer's cost for taking testimony and no cost was incurred for that purpose in these consolidated cases. LSA-R.S. 13:4521.
Accordingly, for the reasons assigned, the judgment is amended so as to relieve the defendant municipality of the payment of costs of court and, as thus amended, is affirmed.
Amended and affirmed.